UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TENET BUSINESS SERVICES CORPORATION and TENET EMPLOYMENT INC., *Plaintiffs*, v. ASCENSION HEALTH ALLIANCE, *Defendant*. | § § § § § § § § § § § | Civil Action No. 3:24-CV-0927-X |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Ascension Health Alliance, d/b/a Ascension's (Ascension) Motion for Summary Judgment (Doc. 61) and Motion to Strike Michael James Bierman's Testimony (Doc. 90). After reviewing the motions, the briefing, and the applicable law, the Court **GRANTS** Ascension's Motion for Summary Judgment and **DENIES AS MOOT**[1] the Motion to Strike.

## I. Background

This opinion is the third on a dispositive motion in this case. The Court will briefly recount the underlying dispute and procedural history.

Plaintiffs Tenet Business Services Corporation and Tenet Employment, Inc. (collectively "Tenet") and Ascension are competitors that provide healthcare services across the country. Tenet alleges that Ascension improperly solicited four of Tenet's

[1] The Court's disposition on summary judgment renders Bierman's damages testimony unnecessary.

employees in violation of the agreements Tenet had with those employees. Tenet brings claims for tortious interference and civil conspiracy arising from Ascension's involvement with those alleged contractual violations.

Two of the four employees were executives at Tenet. Sally Deitch, the first of the four to leave, worked for Tenet in various executive positions, including as the Group Chief Executive Officer over Tenet's Mid-South region. Then on August 4, 2021, Deitch signed a Severance Agreement and General Release (Severance Agreement) that contained non-compete, non-disclosure, and non-solicitation provisions.

After Deitch left Tenet, Tenet alleges that Deitch and Ascension together solicited Paula Phillips to leave Tenet. Deitch had supervised Phillips when she worked for Tenet. Phillips served as Tenet's Vice President of Workforce Management and Education for about two years. When Tenet promoted Phillips to this position, she signed a Confidentiality Agreement with non-compete and non-solicitation clauses. The non-compete prohibited her, for a period of twelve months after leaving Tenet, from providing elsewhere the same services she provided to Tenet in her last six months of employment. Also for twelve months, the Agreement prohibited her from directly or indirectly disrupting or interfering with Tenet's business or soliciting or raiding Tenet's employees.

According to Tenet, Phillips and Ascension then solicited two more employees to make the jump too. Tenet asserts that Ascension tortiously interfered with Phillips' noncompete and non-solicitations agreements with Tenet and conspired with

Phillips in breaching the agreements. Tenet's operative complaint only brings claims against Ascension related to Phillips. Tenet claims that Ascension tortiously interfered with Phillips's non-compete and non-solicitation agreement, and that Ascension conspired with Phillips to violate those agreements.

The Court denied Ascension's motion to dismiss because it found that Tenet had pled facts sufficient to establish all elements of the tortious interference and civil conspiracy claims. Other than briefly characterizing Tenet's agreement with Phillips as "a naked restraint on trade," Ascension's motion to dismiss did not argue that the agreement was unenforceable under Texas law.[2] Ascension's motion for summary judgment now argues that Tenet's agreement with Phillips is unenforceable. Ascension also argues that Tenet has not established the tortious interference claim's damages element and the civil conspiracy claim's meeting of the minds element. Ascension has also filed a motion to strike Michael James Bierman's testimony as to damages.

## II. Legal Standard

Courts may grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A material fact is one "that might affect the outcome of the suit under the governing law."[4] And a "dispute is genuine if the evidence is such that a

---

[2] Doc. 17 at 3 (quoting *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 770 (Tex. 2011)) (cleaned up).

[3] FED. R. CIV. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

reasonable jury could return a verdict for the nonmoving party."[5] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[6]

The movant bears the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine [dispute] of material fact."[7] Then "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[8] It is the nonmovant's burden to "present affirmative evidence in order to defeat a properly supported motion for summary judgment."[9] This requires the nonmoving party to "go beyond the pleadings and establish specific facts showing that there is a genuine dispute."[10]

## III. Analysis

Ascension contends it is entitled to summary judgment because there is no genuine dispute of material fact and the non-compete and non-solicitation agreements at issue are unenforceable as a matter of law. If the agreements are unenforceable, Ascension argues Tenet's civil conspiracy claim falls with them.

---

[5] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

[6] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c)(1).

[8] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248–49).

[9] *Anderson*, 477 U.S. at 257.

[10] *McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 365 (5th Cir. 2015) (quoting *Celotex*, 477 U.S. at 324) (cleaned up).

Tenet, by contrast, argues that the relevant agreements are valid and enforceable and that a genuine dispute of material fact exists.

### A. Tenet's non-compete and non-solicitation agreements are overbroad and unenforceable under the Texas Covenants Not to Compete Act.

Tenet's claims fail as a matter of law because the Agreement between Tenet and Phillips is overbroad and unenforceable, and thus cannot form the basis of a tortious interference claim.

To establish a claim for tortious interference with contract under Texas law, a plaintiff must establish: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss."[11] "A defendant may defeat a tortious-interference claim on summary judgment by disproving at least one element of the claim as a matter of law."[12] If an agreement is unenforceable, it "cannot form the basis of an action for tortious interference."[13]

Texas courts have long treated an agreement not to compete as a restraint of trade.[14] A restraint of trade agreement is unenforceable on public policy grounds unless the agreement is reasonable.[15] Texas's Covenants Not to Compete Act replaced the prior common law approach and now determines whether a covenant not

---

[11] *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

[12] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017).

[13] *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 665 (Tex. 1990).

[14] *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990).

[15] *See id.*

to compete is reasonable and therefore enforceable.[16] "[A] covenant not to compete is enforceable . . . to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee."[17] "To ensure the legitimacy of the interest protected, the restrictions should bear some relation to the activities of the employee."[18] The Texas Covenants Not to Compete Act "imposes a reasonableness test where time, geography, and scope of activity are the main factors," but courts have clarified these "are factors, not elements."[19] So, "indefinite time or unlimited geographic scope are not automatic bars."[20]

"The enforceability of a covenant not to compete is a question of law."[21] When a court finds a non-compete or non-solicitation agreement unenforceable, the court "normally has a duty to reform an agreement deemed to contain unreasonably broad restrictions."[22] However, if the plaintiff can no longer seek injunctive relief and only

---

[16] *See Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing TEX. BUS. & COM. CODE § 15.50).

[17] TEX. BUS. & COM. CODE § 15.50; *see Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011).

[18] *U.S. Risk, LLC v. Hagger*, 650 F. Supp. 3d 520, 528 (N.D. Tex. 2023) (Godbey, C.J.) (cleaned up) (citing *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.)).

[19] *Henson Patriot Ltd. Co., LLC v. Medina*, No. SA-14-CV-534, 2014 WL 4546973, at *2 (W.D. Tex. Sept. 11, 2014) (citing *Oliver v. Rogers*, 976 S.W.2d 792, 800 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)).

[20] *Id.* (cleaned up).

[21] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[22] *Caliber Home Loans, Inc. v. Cove*, No. 3:22-CV-2298, 2025 WL 71983, at *9 (N.D. Tex. Jan. 10, 2025) (Lynn, J.) (citing TEX. BUS. & COM. CODE § 15.51(c) ("The court may not award the promisee

seeks monetary damages, then the reformation of the terms in unnecessary.[23]

***Non-Compete Agreement***

The non-compete at issue states:

> During your employment and for a period of twelve (12) months after the end of your employment . . . you agree that you will not compete, directly or indirectly with Tenet by doing work in a service line in which you provide services for Tenet within the last six (6) months prior to your separation from the company. Compete means and includes rending services, accepting employment, consultation, or any other business relationship with any company, association, affiliation, consortium, or other for-profit or non-for-profit organization that provides or offers health care services or contracts or agreements for health care services similar to those provided or offered by Tenet.[24]

"Texas courts generally require some geographic limitation in a valid covenant not to compete."[25] Although the absence of an express geographic restriction is not automatically fatal, there must be an adequate substitute for a geographic restriction.[26] For example, in *GE Betz, Inc. v. Moffitt-Johnston*, the Fifth Circuit explained that the absence of a geographic restriction is not automatically fatal where the covenant otherwise limits the employee's clients or another reasonable substitute.[27] Likewise, courts have upheld covenants without a specific geographic

---

damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief.")) (cleaned up).

[23] *See id.*

[24] Doc. 63 at 121.

[25] *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 797 (S.D. Tex. 2010) (citing *Goodin v. Jolliff*, 257 S.W.3d 341, 352 (Tex. App.—Fort Worth 2008, no pet.); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660–61 (Tex. App.—Dallas 1992, no pet.)).

[26] *See Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 329 (5th Cir. 2018).

[27] 885 F.3d 318, 329 (5th Cir. 2018).

limitation where the restriction was adequately confined by the clients with whom the employee had worked.[28]

"A limitation on the scope of activity to be restrained is reasonable if it bears some relation to the work of the employee."[29] A non-compete that includes an "industry-wide exclusion from subsequent employment is unenforceable."[30] A non-compete is also overbroad when it limits an employee's "ability to perform tasks that were not part" of their previous job duties.[31]

Here, Tenet does not contest that its non-compete agreement includes no geographical restriction.[32] Thus, the non-compete agreement's enforceability turns on whether its "service line" restriction[33] is a reasonable substitute for a geographical limitation because it is sufficiently tailored in scope.

The non-compete did not limit Phillips from working for particular clients, within a particular geographic area, or in connection with specific relationships she developed on Tenet's behalf. Instead, it prohibited her from "doing work in any service line" in which she provided services to Tenet during her final six months of

---

[28] 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Organogenesis, Inc. v. Melcher*, 2:24-CV-006, 2025 WL 776189, at *3 (N.D. Tex. Mar. 11, 2025) (Reno, M.J.) ("Texas courts generally consider the territory in which the employee worked for the employer to be a reasonable geographic restriction." (cleaned up)).

[29] *Providence Title Co. v. Truly Title, Inc.*, 547 F.Supp.3d 585, 603 (E.D. Tex. 2021).

[30] *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.).

[31] *U.S. Risk, LLC*, 650 F. Supp. 3d at 529.

[32] *See* Doc. 84 at 19–20.

[33] Doc. 63 at App. 121.

her employment.[34] The restraint is to her service line—which Tenet defines as hospitals[35]—not to clients, relationships, territories, or activities. And that distinction is critical.

Tenet's reliance on *Gallagher* is misplaced. There, the non-compete was limited to the employer's clients with whom the employee had worked—a limitation the court recognized as a reasonable substitute for geography.[36] Tenet's non-compete is significantly broader, as it follows Phillips's service line, barring her from working in hospitals, not with actual clients or relationships. It therefore reaches employers and activities having no connection to any protectable interest Tenet could have in Phillips's particular work.

Nor does the fact that Phillips remains free to work elsewhere in healthcare resolve the problem. The relevant question is whether the restriction is reasonably related to her work and no broader than necessary to protect Tenet's legitimate interests.[37] Because the "service line" restriction extends nationwide and is untethered to Phillips's clients, territory, or particular relationships, it restrains substantially more activity than necessary. The non-compete is therefore overbroad and unenforceable as written.

Furthermore, neither *Merritt Hawkins & Associates, LLC v. Gresham*,[38] nor

[34] *Id.*

[35] Doc. 84 at 20.

[36] *See Gallagher*, 312 S.W.3d at 654.

[37] *See U.S. Risk*, 650 F. Supp. 3d at 527–29.

[38] 79 F. Supp. 3d 625, 641 (N.D. Tex. 2015) (Solis, J.).

*Salas v. Chris Christensen Systems, Inc.*,[39] supports Tenet's position. In *Merritt*, the non-compete did not contain an industry-wide exclusion because it was limited to the temporary staffing field, not the staffing industry or medical industry.[40] And in *Salas*, the non-compete limited a Vice President with access to trade secrets from working within the pet-supply manufacturing and distribution industry and *not* the entire pet industry.[41]

Those cases do not establish that any limitation short of the entire industry is necessarily reasonable. Rather, they demonstrate that the relevant question is whether the restriction bears a meaningful relationship to the employee's actual work and the employer's legitimate interests. Here, the "service line" limitation may prohibit Phillips from working not just within the entire healthcare field, but all hospitals. This would prevent Phillips from performing work for organizations with which she may have had no relationship and in geographic areas in which Tenet may have no protectable interest simply because the work falls within the same broadly defined "service line." Therefore, the restriction is broader than necessary to protect Tenet's legitimate business interests.[42]

Accordingly, the "service line" provision is not an adequate substitute for a geographic limitation. Because the covenant contains neither a geographic restriction nor a sufficiently narrow substitute, and because its activity restriction

---

[39] No. 10-11-00107-CV, 2011 WL 4089999, at *20 (Tex. App.—Waco Sept. 14, 2011, no pet.).

[40] 79 F. Supp. 3d at 641.

[41] 2011 WL 4089999, at *20.

[42] *See U.S. Risk*, 650 F. Supp. 3d at 527–29.

extends beyond Phillips's particular clients, relationships, and activities, the covenant is overbroad and unenforceable as written.

***Non-Solicitation Agreement***

The non-solicitation agreement at issue states:

> You also agree that during the period of your employment and for twelve (12) months after the end of your employment with Tenet, you will not directly or disrupt, damage, impair or interfere with the business of Tenet or the business of any facility for which you performed services during the 12 months prior to your separation from service, whether by way of interfering with, soliciting or raiding its employees, disrupting its relationships with physicians, patients, customers, vendors, contractors, professional health care providers or provider organizations, businesses, persons or entities or otherwise.[43]

The factors that determine a non-compete clause's reasonableness also apply to a non-solicitation covenant's reasonableness.[44] Therefore, the Texas Covenants Not to Compete Act applies to non-solicitation agreements as well as non-compete covenants.[45] "Non-solicitation covenants cannot be enforced without reasonable limitations as to time, geographical area, and scope of activity to be restrained."[46]

Tenet relies on cases recognizing that a restriction limited to an employer's own employees may sometimes serve as a functional substitute for a geographic limitation.[47] But those authorities do not establish that a restriction covering every

---

[43] Doc. 63 at 121.

[44] *See Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438–39 (S.D. Tex. 2008).

[45] *See id.* (citing *Shoreline Gas, Inc. v. McGaughey*, No. 13-07-364-CV, 2008 WL 1747624, at *10 (Tex. App.—Corpus Christi April 17, 2008, no pet)).

[46] *U.S. Risk, LLC*, 650 F.Supp.3d at 528 (cleaned up); *see* TEX. BUS. & COM. CODE § 15.50(a).

[47] *See* Doc. 84 at 22 (citing *Everett Financial, Inc. v. Primary Residential Mortgage, Inc.*, No. 3:14-CV-1028-D, 2016 WL 7378937, at *8 (N.D. Tex. Dec. 20, 2016) (Fitzwater, J.), and *Smith v. Nerium Int'l, LLC*, No. 05-18-00617-CV, 2019 WL 3543583 (Tex. App.—Dallas Aug. 5, 2019, no pet.) (mem. op.)).

employee of a large company is categorically reasonable. Indeed, *Everett Financial, Inc. v. Primary Residential Mortgage, Inc.* expressly observed that the defendants had not identified authority establishing that it was reasonable to restrain solicitation of all current employees of a company of the relevant company's size.[48]

Phillip's non-solicitation agreement is more like the one at issue in *U.S. Risk, LLC v. Hagger*, where the Court found that the non-solicitation agreement was overbroad and unenforceable because the clause "imposed limitations beyond what is necessary to protect [the company's] business interests" by barring former employees from soliciting or attempting to solicit "any employee or independent contractor of the Company."[49]

Phillips's non-solicitation agreement goes even further by prohibiting her from interfering with or soliciting not only Tenet employees, but also Tenet's physicians, patients, customers, vendors, contractors, healthcare providers, provider organizations, businesses, and other persons or entities.[50] It was not confined to individuals with whom Phillips actually worked or had a relationship. Tenet's provision goes further still by extending beyond employees to a broad universe of business relationships and prohibiting not merely solicitation but conduct that could "disrupt," "damage," "impair," or "interfere with" Tenet's business.[51]

The non-solicitation provision therefore reaches substantially beyond Phillips's

---

[48] 2016 WL 7378937, at *8.

[49] 650 F.Supp.3d at 528–29 (cleaned up).

[50] *See* Doc. 63 at App. 121.

[51] *Id.*

actual relationships and beyond what was necessary to protect Tenet's legitimate interests. It is thus overbroad and unenforceable.

* * *

Tenet's non-compete and non-solicitation agreements are unenforceable as a matter of law. Tenet is seeking damages rather than injunctive relief, so reformation under section 15.51(c) is not necessary.[52] Tenet's claims for tortious interference therefore fail as a matter of law.

**B. Tenet's civil conspiracy claim relies on conduct that is not unlawful.**

Tenet also brings a civil conspiracy claim against Ascension.[53] Under Texas law, a civil conspiracy occurs when two or more persons join together to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.[54] A civil conspiracy cannot exist without an underlying unlawful act.[55]

Tenet's theory is that Ascension hired Deitch and Phillips (in violation of the latter's non-compete agreement) to recreate at Ascension the workforce management team Phillips led at Tenet.[56] Tenet says Phillips then solicited (in violation of her non-solicitation agreement) other Tenet employees to join this team.[57] The heart of Tenet's argument is that Phillips violated her non-compete and non-solicitation agreement. But the Court found that Phillips's non-compete and non-solicitation

---

[52] *See* TEX. BUS. & COM. CODE § 15.51(c).

[53] *See* Doc. 16 at 10.

[54] *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

[55] *See id.*

[56] *See* Doc. 84 at 28–29.

[57] *See id.*

agreements are unenforceable as a matter of law. Because Tenet's civil conspiracy claim relies on Phillips's breach as the unlawful act, the claim fails absent a breach.[58] Tenet's civil conspiracy claim therefore fails as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Ascension's motion for summary judgment. The Court also **DENIES AS MOOT** Ascension's Motion to Strike Bierman's Testimony. The Court **DISMISSES WITH PREJUDICE** all of Tenet's claims against Ascension.

**IT IS SO ORDERED** this 29th day of October, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

[58] *See Massey*, 652 S.W.2d at 934.